Marshall W. COLLINS, Gary Dannenberg, Theodore M. Koler, and Elmer Walker, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

OILSANDS QUEST INC. (f/k/a Canwest Petroleum Corporation), Christopher H. Hopkins, T. Murray Wilson, Karim Hirji, Garth Wong, Ronald Phillips, Thomas Milne, Gordon Tallman, William Scott Thompson, Pamela Wallin, John Read, McDaniel & Associates Consultings Ltd. and TD Securities, Inc., Defendants.

In re Oilsands Quest Inc., et al., Applicants in Foreign Proceedings.

No. 11 civ. 1288 (JSR), 12–10476 (JSR).

United States District Court, S.D. New York.

Dec. 27, 2012.

David R. Scott, Beth Ann Kaswan Judith S. Scolnick, Thomas Livezey Laughlin, IV, Scott & Scott, LLC, New York,

NY, Amanda F. Lawrence, Scott & Scott, LLC, Colchester, CT, for Plaintiffs.

Andrew Garry Gordon, Moses Silverman, Robyn F. Tarnofsky, James Joseph Beha, II, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Matthew Terrence McLaughlin, Andrew Flagg Brin Diamond, David Neil Cinotti, Edmund M. O'Toole, Julia Lucia Davis, Venable, LLP, New York, NY, Jennifer M. Osgood, Sara Cantrick Van Deusen, Trevor A. Crow, Burns Figa & Will, PC, Greenwood Village, CO, for Defendants.

## MEMORANDUM

JED S. RAKOFF, District Judge.

Ernst & Young Inc., a bankruptcy monitor and authorized foreign representative (the "Monitor") for Oilsands Quest, Inc. ("Oilsands") and certain of its subsidiaries, filed Verified Petitions for Recognition of Foreign Proceedings and Related Relief (the "Petitions") pursuant to Chapter 15 of the Bankruptcy Code. The Monitor seeks 1) recognition of certain bankruptcy proceedings (the "Canadian Proceedings") pending before the Court of Queen's Bench of Alberta (the "Alberta Court") as foreign main proceedings under section 1517 of the Bankruptcy Code; 2) an order giving full force in the United States to certain orders of the Alberta Court (the only contested parts of these orders being the stays of pending litigation against the individual officers and directors of Oilsands); and 3) a stay of proceedings in the above-captioned civil case against McDaniel & Associates Consulting, Ltd. ("McDaniel"), a former consultant to Oilsands. Plaintiffs in the above-captioned civil action initially objected to all three of the Monitor's requests, but they later agreed that if the Court decided to grant the Monitor's first two requests, the Court should also grant the Monitor's third request, the stay against McDaniel. By bottom-line order dated March 29, 2012, the Court granted the Monitor's petitions in their entirety. Although the parties have now filed proposed settlement papers, this Memorandum explains the reason for those rulings.

■ The Court turns first to the question of recognition of the Canadian Proceeding as a foreign main proceeding. The Monitor bears the burden of proof on this issue. *See In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y.2007). However, the only dispute relating to this recognition is whether the Canadian bankruptcy is indeed pending in the country where the debtor has its center of main interests. *See* 11 U.S.C. § 1517(b)(1). If it is not, then this Court cannot recognize the Canadian proceedings as a foreign main proceeding.

■ Oilsands has a registered· office in Colorado. Section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office … is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). Here however, there is evidence to the contrary, and so the Court must examine all of the evidence to determine where Oilsands's center of main interest lies. In so doing, factors that are normally relevant include, *inter alia*, the locations of the debtor's headquarters, management, assets, and creditors, and the jurisdiction whose law would apply to most disputes. *See In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 70 (Bankr. S.D.N.Y.2011).

■ As to headquarters and management, the Court agrees with the Monitor that Oilsands "is a highly centralized business that is located and operated entirely in and around Alberta, Canada." *See*

Memorandum of Law in Support of Chapter 15 Petitions for Recognition of Foreign Proceedings and Related Relief ("Monitor Mem.") at 8. Oilsands does not have any place of business in the United States, and its headquarters, executive offices, and principal street address are located in Alberta, Canada. Verified Petitions for Recognition of Foreign Proceedings and Related Relief ("Petitions") ¶ 22. Moreover, all of Oilsands's strategic decisionmaking and corporate functions occur in Canada, and all of Oilsands's employees are located in Canada. *See* Monitor Mem. at 8; Petitions ¶ 8. The fact that Oilsands has a registered agent in Colorado and is listed on the American Stock Exchange is not sufficient to overcome the other evidence that Oilsands's headquarters and management are located in Canada.

Oilsands's principal assets are also located in Canada. Those assets are permits, licenses, and leases relating to natural resource properties in Alberta and Saskatchewan, which were granted by the provinces of Alberta or Saskatchewan. Petitions ¶ 24.

Oilsands's primary creditors are also in Canada. *See* Petitions ¶ 25. In fact, all but two of the 90 creditors who have filed claims against Oilsands are located in Canada. *See* Transcript of Oral Argument, March 15, 2012 ("Tr.") at 6. While plaintiffs argue that the putative class in the above-captioned civil suit before this Court is the largest creditor of Oilsands, the members of the putative class are not yet proven creditors, and even if plaintiffs ultimately prevail in the civil suit, their claims would be subordinated to general unsecured claims. 11 U.S.C. § 510(b); Companies' Creditors Arrangement Act, R.S.C. 1985, c. C–36 § 2(d).

Turning to the jurisdiction whose law will govern most disputes, the Court also finds that this jurisdiction is Canada. Most disputes that arise out of the bankruptcy will relate to assets and property, and those disputes will be governed by Canadian law.

Finally, as discussed above, a company's center of main interests should be ascertainable by third parties. The Monitor correctly argues that Oilsands has represented itself to investors as a company based in Canada. Every SEC filing, press release, presentation, and prospectus has said that the company was based in Canada. *See* Monitor Mem. at 4–5. It is true that Oilsands was required in SEC filings to state that it was incorporated in the United States, but those SEC filings also stated that the principal executive offices of the Company were located in Alberta. *See* Declaration of Judith Scolnick, Mar. 5, 2012, Exs. A, B.

Therefore, the Court recognizes the Canadian Proceedings as "foreign main proceedings." Having done so, the Court must next determine whether to give full force and effect to the orders of the Alberta Court.

Section 1509 of the Bankruptcy Code provides that "if the court grants recognition [as a foreign main proceeding] under section 1517, and subject to any limitations that the court may impose consistent with the policy of [chapter 15] . . . a court in the United States shall grant comity or cooperation to the foreign representative." 11 U.S.C. § 1509(b)(3). But the statutory imperative that the Court shall grant comity or cooperation does not mean that the Court must enforce every order entered into by the Alberta Court, for, under the plain terms of the statute, the Court must also consider "any limitations that the court may impose consistent with the policy of [chapter 15]." *Id.* § 1509(b). More generally, "[t]he principle of comity has never meant categorical deference to

foreign proceedings. It is implicit in the concept that deference should be withheld where appropriate to avoid the violation of the laws, public policies, or contrary to the public policy of the United States." *See* 11 U.S.C. § 1506; Monitor Mem. at 12; Pls.' Mem. at 4. As this Court has previously held, the legislative history of section 1506 makes clear that the public policy exception should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States." *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y.2006). Accordingly, a foreign judgment should generally be accorded comity if its proceedings are "fair and impartial." *Id.* at 90–91. It is clear that the Canadian proceedings have been fair and impartial, and that the Canadian proceedings have afforded creditors a full and fair opportunity to be heard in a manner that is fully consistent with this country's standards of due process.

The stay of proceedings for officers and directors is a standard feature of proceedings under the CCAA and has routinely been enforced in the United States upon recognition of a foreign proceeding under Chapter 15. *See, e.g., In re Muscletech Research and Development Inc. et al.*, 06 Civ. 538, Dkts. 45, 46. The stay against individual directors is a fixture of Canadian bankruptcy proceedings in part because Canadian bankruptcy proceedings typically involve a claims process where claims against the company, officers, and directors are filed and handled together. *See* Tr. at 12. Although this is not always true in the United States, "[w]e are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." *Ackermann v. Levine*, 788 F.2d 830 (2d Cir.1986) (quoting *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 111, 120 N.E. 198 (N.Y.1918)). Thus, for example, this Court has enforced claims

processes that did not provide for a jury trial. *Ephedra*, 349 B.R. at 336.

██ The Court cannot conclude that the enforcement of the Canadian Court's temporary stay of proceedings would be contrary to the most fundamental policies of the United States. It is true that the protection of United States investors and the regulation of United States capital markets are matters of national public interest, and private securities class actions are an important component of that protection. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). But, extending a *temporary* stay of proceedings will not be manifestly contrary to those interests. If the request for a stay had been presented to this Court in the first instance, the Court might not have granted it. But, the question here is not whether this Court should grant a stay in the first instance, but whether it should accord comity and deference to the stay orders entered by the Alberta Court. The Court concludes that in light of the comity principles laid out above, the Court must defer to the procedures set forth in the Canadian Proceedings and enforce the stay.

██ Plaintiffs make one final argument that the Court must address, *viz.*, that Oilsands and the Monitor have engaged in gamesmanship, and that this gamesmanship is a separate reason for refusing to enforce the Alberta Court's orders. A court should not enforce a ruling from a foreign court under Chapter 15 where a party has engaged in "strategic conduct that is not to be encouraged." *See Underwood v. Hilliard (In re Rimsat)*, 98 F.3d 956, 962 (7th Cir.1996). Plaintiffs argue that Oilsands decided to file bankruptcy proceedings in Canada as a "legal maneuver" that was "apparently designed to obtain for [the Individual Defendants] a type of relief generally not available in the

598

United States: a stay of actions against them." Pls.' Mem. at 1. Plaintiffs undermine their own argument, however, by simultaneously asserting that the Monitor "sat on its hands for ten weeks" after the Alberta Court issued the initial stay before filing its Chapter 15 petition. *See id.* If the filing of the Canadian Proceedings had been part of a broader strategy to stay the ongoing civil case, the Monitor would have immediately filed the Chapter 15 petitions and sought a stay; it would not have debated for ten weeks about whether to file the Chapter 15 petitions.

Finally, as the Court noted in its bottom-line order, plaintiffs agreed at oral argument that if the Court granted the Monitor's requests to recognize the Canadian Proceedings as foreign main proceedings and to enforce the Alberta Court's orders, it should also grant the Monitor's request to stay the above-captioned civil case against McDaniel. *See* Tr. at 40–41.

For the foregoing reasons, the Court reaffirms its order of March 29, 2012, granting the Monitor's petitions. It remains only to add that on August 23, 2012, the Alberta Court lifted its stay as to Oilsands's former officers and directors with respect to this litigation, and that, accordingly, on October 19, 2012, this Court lifted its stay as to Oilsands's officers and directors and as to McDaniels. In addition, the Court notes that on December 21, 2012, the parties filed a joint motion for preliminary approval of a class action settlement, which will be resolved in due course.